No.  2--97--1257

     

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Lake County.

) 

Plaintiff-Appellee, ) 

)

) No. 97--CF--1617

)

DAVID S. MORGAN, ) Honorable

) Barbara Gilleran-Johnson,

Defendant-Appellant. ) Judge, Presiding.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the defendant, David S. Morgan, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)) and unlawful delivery of a controlled substance within 1,000 feet of a public park (720 ILCS 570/407(b)(1) (West 1996)) and sentenced to 10 years’ imprisonment.  On appeal, the defendant argues that (1) he was not proved guilty beyond a reasonable doubt; (2) the trial court erred in allowing certain opinion testimony by one of the arresting officers; and (3) his sentence was excessive.  We affirm.

At trial, Officer Gabriel Guzman of the Waukegan police department testified on behalf of the State.  Officer Guzman testified that on June 19, 1997, he observed the defendant standing next to a brown Cadillac parked in the driveway of a public parking 

lot about 15 to 20 feet away from Bedrosian Park in Waukegan.  The defendant was standing near the back door of the vehicle on the driver’s side.  The defendant was with two other people who were standing two or three feet away from him near the front door of the vehicle on the driver’s side.  As Officer Guzman drove his vehicle towards the Cadillac, the three individuals separated, with the defendant walking towards the rear of the vehicle and the other two individuals walking towards the front of the vehicle.

After Officer Guzman pulled his vehicle up alongside the Cadillac, he and his two partners got out.  Officer Guzman looked under the rear of the Cadillac and found a cigarette package containing numerous baggies full of white rock-like substances.  Officer Guzman also saw one of his partners recover a revolver from inside the Cadillac.  Officer Guzman never saw the defendant in physical possession of the gun or the cigarette package that he found under the Cadillac.

Officer Tom Granger testified that he was riding in Officer Guzman’s vehicle on the date in question.  Officer Granger testified that he saw the defendant and two other people standing by the rear door on the driver’s side of a parked Cadillac.  The Cadillac was within 1,000 feet of the boundaries of Bedrosian Park.  Officer Granger testified that he observed the defendant reach into his pocket and pull out something like "a piece of plastic" and then make a jerking movement as if he were throwing something.  Officer Granger subsequently told Officer Guzman to look under the car to retrieve the item he thought the defendant might have thrown there.  Officer Guzman found the cigarette packet under the car and gave it to Granger.  Back at the station, Granger discovered that the cigarette packet contained sixteen smaller, individually wrapped packets containing a white rocky substance.

Sergeant Daniel Greathouse of the Waukegan police department also testified on behalf of the State.  He testified that he was with Officers Granger and Guzman on the date in question conducting surveillance in the area of Bedrosian Park.  He testified that Bedrosian Park is a small area open to the public, measuring approximately 100 feet by 100 feet and containing one or two basketball courts and some playground equipment.  Over objection, Sergeant Greathouse testified that he had participated in over 100 arrests in Bedrosian Park for possession and delivery of controlled substances and that the area was "notorious for drug trafficking." 

Sergeant Greathouse testified that he observed the defendant standing by the rear driver’s side window of a Cadillac parked approximately 15 to 18 feet from the park.  Two other people were standing by the car with the defendant.  When the officers approached the area, Sergeant Greathouse observed the defendant put his left hand into his pocket and then make a tossing or dropping motion.  However, Sergeant Greathouse did not see the defendant physically remove anything from his pocket.  Sergeant Greathouse further testified that the rear window of the Cadillac was open and that he observed a .22-caliber revolver lying between the seat and the door.  The revolver contained seven live rounds and one spent round.  Although the defendant told Sergeant Greathouse that he owned the car, he insisted that the gun and the drugs were not his.   The defendant testified that he had been in the park area for about two hours prior to his arrest.  When he first arrived, he met with three other people.  The defendant agreed to lend his car to them in return for some rock cocaine to smoke.  The defendant testified that he had lent his car to one of these people four or five times in the past.  He testified that there was no gun in his car when he lent it to them and that the gun that was recovered was not his.  While the others were using his car, the defendant remained in the park playing basketball.

The defendant testified that, when the police arrived at the scene, the others had already returned and he was talking to them.  Right before the police got out of their car, one of the other people threw something to the ground.  The defendant testified that he believed that the item was cocaine, and he tried to kick it under the car because he wanted to be able to smoke it later.

The parties stipulated that the rocky white substance recovered by the officers contained cocaine.  Specifically, the crime lab found 17 individually wrapped packets of cocaine weighing a total of 1.4 grams.

The jury subsequently found the defendant guilty of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1996)) and unlawful delivery of a controlled substance within 1,000 feet of a public park (720 ILCS 570/407(b)(1) (West 1996)).  Following a sentencing hearing, the trial court sentenced the defendant to concurrent sentences of 3 years’ imprisonment for the unlawful possession count and 10 years’ imprisonment for the unlawful delivery count.

The defendant’s first argument on appeal is that the State did not prove him guilty of the offense of delivery of a controlled substance within 1,000 feet of a public park beyond a reasonable doubt.  Specifically, he argues that the State did not introduce any evidence demonstrating that he intended to deliver the drugs.  Additionally, the defendant contends that the State did not prove that Bedrosian Park was in fact a public park.

We note at the outset that it is not the province of this court to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, 
any
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (Emphasis in original.)  
Collins
, 106 Ill. 2d at 261, quoting 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  Moreover, it is the function of the jury to determine the credibility of the witnesses and draw reasonable inferences from the evidence.  
People v. Robinson
, 167 Ill. 2d 397, 413 (1995).

Intent to deliver is necessarily proved by circumstantial evidence, and a reasonable inference of intent to deliver narcotics arises from the possession of contraband in excess of any amount that could be designed for personal use.  
Robinson
, 167 Ill. 2d at 408.  The inference of intent may be enhanced by the combination of drugs and the manner in which the drugs are packaged.  
Robinson
, 167 Ill. 2d at 408; 
People v. Friend
, 177 Ill. App. 3d 1002, 1021 (1988).  Indeed, our supreme court has held that, in appropriate circumstances, packaging alone may be sufficient evidence of intent to deliver.  
Robinson
, 167 Ill. 2d at 414.  Other relevant factors include the defendant’s possession of weapons, large amounts of cash, beepers, cellular telephones, and drug paraphernalia.  
Robinson
, 167 Ill. 2d at 408.

In 
Robinson
, the defendant possessed 2.8 grams of cocaine wrapped in 36 individual packets and 2.2 grams of PCP contained in 4 packets.  
Robinson
, 167 Ill. 2d at 413.  Although the defendant did not have a weapon, large amounts of cash, or a beeper, our supreme court nonetheless found that the manner in which the drugs were packaged provided sufficient evidence of the defendant’s intent to deliver (
Robinson
, 167 Ill. 2d at 414).  Furthermore, the police had received several anonymous telephone calls complaining of drug sales in the defendant’s apartment building.  
Robinson
, 167 Ill. 2d at 413.

We believe that the evidence introduced by the State herein was at least as compelling as that presented in 
Robinson
.  Here, the defendant was found to be in possession of 1.4 grams of cocaine.  Sergeant Greathouse testified that the manner in which the cocaine was packaged in 17 individually wrapped plastic bags indicated that it was not for personal use.  Additionally, the defendant was seen talking to two other individuals who immediately dispersed upon the arrival of the police.  At this time, the defendant was seen throwing an item under the car.  The police also subsequently found a loaded .22-caliber handgun lying between the seat and the door of the defendant’s car.  Moreover, the police did not uncover any drug paraphernalia that would indicate that the defendant had recently been consuming the cocaine.

As the defendant correctly notes, several courts have held that even greater amounts of cocaine than that at issue here could reasonably be found to be for personal consumption.  See 
People v. Thomas
, 261 Ill. App. 3d 366, 371 (1994) (an amount of 5.5 grams of cocaine, standing alone, does not give rise to an inference of intent to deliver); 
People v. McLemore
, 203 Ill. App. 3d 1052, 1056 (1990) (3.3 grams of cocaine not greater than would be used for personal consumption); 
People v. Crenshaw
, 202 Ill. App. 3d 432, 435-36 (1990) (loaded weapon insufficient circumstantial evidence of intent to deliver 11.2 grams of cocaine divided into 22 packages).  However, our supreme court specifically declined to follow these cases in 
Robinson
.  See 
Robinson
, 167 Ill. 2d at 412.  As detailed above, the State here presented other evidence in addition to the fact that the defendant possessed 1.4 grams of cocaine.  Taken as a whole, we cannot say that such evidence was so unsatisfactory that it created a reasonable doubt as to the defendant’s intent to deliver.  See 
Robinson
, 167 Ill. 2d at 413.

We next turn to a consideration of whether the State proved beyond a reasonable doubt that Bedrosian Park is a public park.  As summarized above, Sergeant Greathouse testified that Bedrosian Park was open to the public and that the defendant’s car was parked on a driveway to a public parking lot approximately 15 to 18 feet away.  Sergeant Greathouse further testified that Bedrosian Park was approximately 10,000 square feet and was located on the southeast corner of Utica and Liberty Streets in Waukegan.  The area contains two basketball courts and another 25 feet of playground equipment enclosed by a fence.

The defendant argues that such testimony failed to establish the specific legal status of Bedrosian Park.  The defendant apparently argues that Sergeant Greathouse was a layperson and was therefore unqualified to testify as to whether the area was indeed a public recreational park.  Rather, the defendant contends that the State was obligated to call a city or park district official or produce a certified copy of a plat of survey.  The defendant offers no primary authority in support of this contention.

Section 407(b)(1) of the Illinois Controlled Substances Act (the Act) (720 ILCS 570/407(b)(1) (West 1996)) prohibits the delivery of a controlled substance "on any public way within 1,000 feet of the real property comprising *** [a] public park."  The Act does not define the term "public park," and we are aware of no cases that have precisely considered what proof is required to establish the existence of a public park.  We do note that, in other contexts, this court has defined the term park as " 'a piece of ground in a city or village set apart for ornament or to afford the benefit of air, exercise or amusement.' " (Emphasis omitted.)  
Emalfarb v. Krater
, 266 Ill. App. 3d 243, 255 (1994), quoting  
Robbins v. Commissioners of Lincoln Park
, 332 Ill. 571, 578 (1928).

The question thus becomes whether Sergeant Greathouse’s testimony was sufficient to establish the status of Bedrosian Park as a public park.  We conclude that it was sufficient.  Sergeant Greathouse was a 10-year veteran of the Waukegan police department who was familiar with the nature of Bedrosian Park and had made over 100 arrests there.  It is generally understood that persons living and working in the community are familiar with various public places in the neighborhood, such as the location of streets, buildings, and the boundaries of counties and town lots.  See 
People v. Jones
, 6 Ill. 2d 252, 254 (1955); 
Hawaii v. Kwak
, 80 Haw. 297, 909 P.2d 1112, 1117-19 (1995).  Such testimony is justified by the same circumstantial assurances of trustworthiness inherent in other types of common knowledge by repute.  See 
Kwak
, 80 Haw. at ___, 909 P.2d at 1117-19; see also 
North Carolina v. Alston
, 111 N.C. App. 416, 420, 432 S.E.2d 385, 387 (1993) (testimony of layperson held to be competent and sufficient to prove drug sale took place in proximity to school grounds). 

We therefore reject the defendant’s assertion that the State was obligated to produce recorded plats of survey to establish that Bedrosian Park was a legally dedicated city park.  Rather, we hold that the State here sustained its evidentiary burden under the statute.  Indeed, we note that the defendant himself referred to Bedrosian Park as a "park" and admitted playing basketball there while he was waiting for his car to be returned.  Therefore, based on the totality of the evidence, we conclude that the defendant was proved guilty of the offense beyond a reasonable doubt.

The defendant’s next argument on appeal is that he should be given a new trial because the trial court improperly permitted the State to elicit opinion testimony from Sergeant Greathouse that the location of the defendant’s arrest was indicative of an intent to deliver drugs.  As detailed above, Sergeant Greathouse testified that he had been involved in approximately 150 narcotics investigations in the Bedrosian Park area.  He testified that he had made over 100 arrests in the area of the park and that the area was "notorious for drug trafficking."  Sergeant Greathouse then opined that an individual carrying 1.4 grams of cocaine in the Bedrosian Park area would be doing so for distribution rather than personal use.  The defendant contends that it was improper for the State to attempt to use the location of the arrest as circumstantial evidence of his intent to deliver.

We believe that this issue has been waived as a result of the defendant’s failure to raise it in his posttrial motion.  A defendant waives an issue on appeal by failing to object at the time the alleged error occurs and by failing to raise the issue in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 198-99 (1988).  When trial error has not been properly preserved for review, our sole concern on appeal is whether the alleged error rises to the level of plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)).  The plain error rule may be invoked only where the evidence was closely balanced or where the alleged error was of such magnitude that the defendant was denied a fair trial.  
People v. Herrett
, 137 Ill. 2d 195, 209-10 (1990).

For the reasons discussed above, we do not believe that the evidence here was closely balanced.  The defendant was arrested in possession of 1.4 grams of cocaine packaged in 17 separate plastic bags.  Sergeant Greathouse testified that the small packages were the type commonly used by drug dealers.  Moreover, the police found a loaded firearm in the defendant’s car.  Such evidence, standing alone, is sufficient to support the defendant’s conviction.  See 
Robinson
, 167 Ill. 2d at 413-14.  Additionally, we do not believe that the alleged error, if any, was so fundamental that it called into question the integrity of the judicial process.  See 
People v. Dantzler
, 213 Ill. App. 3d 858, 861-62 (1991) (police testimony that the area of defendant’s arrest was an area known for drug dealers did not constitute plain error).

The last issue the defendant raises on appeal is that his sentence was excessive.  As noted above, the trial court sentenced the defendant to a term of 10 years’ imprisonment on his conviction for unlawful delivery of a controlled substance within 1,000 feet of a public park.  Specifically, the defendant contends that the trial court improperly considered as a factor in aggravation that the offense was committed within 1,000 feet of a public park.

The determination and imposition of a sentence is a matter involving considerable judicial discretion, and our standard of review is whether the trial court abused its discretion (
People v. Shaw
, 278 Ill. App. 3d 939, 953 (1996)).  However, in imposing sentence, the trial court may not consider in aggravation those elements that are inherent in the underlying offense.  
People v. Conover
, 84 Ill. 2d 400, 404 (1981).  The policy underlying this rule is that it is reasonable to conclude that the legislature has already considered the elements of the offense when setting the applicable sentencing range.  
People v. Pierce
, 223 Ill. App. 3d 423, 441 (1991).

After carefully reviewing the transcript from the sentencing hearing, we do not believe that the trial court improperly considered the fact that the offense occurred within 1,000 feet of a public park as a factor in aggravation.  Rather, we believe that the defendant has taken certain of the trial court’s statements out of context.  However, even if the trial court’s comments had been intended to refer to the location of the arrest, the record reveals that the trial court did not improperly focus on such a factor above all others.  See 
People v. Tross
, 281 Ill. App. 3d 146, 153 (1996).

In imposing sentence, the trial court expressly stated that it had considered all of the relevant factors in aggravation and mitigation.  Of particular importance to the trial court was the fact that the defendant was in possession of a gun at the time he committed the offense.  The trial court also noted that, at the time of the instant offense, the defendant was already on probation for a prior conviction of unlawful use of a weapon.  The trial court also indicated that a 10-year sentence was important for purposes of deterrence.  As the trial court’s sentence was within the sentencing range enacted by the legislature for the offense, we do not believe that the trial court abused its discretion.  See 
People v. Madura
, 257 Ill. App. 3d 735, 741 (1994). 

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and RAPP, JJ., concur.