# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

***People v. Cadena*, 2013 IL App (2d) 120285**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SERGIO CADENA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0285 |
| Filed | August 5, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for unlawful delivery of a controlled substance within 1,000 feet of a church and unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a church were reduced to unlawful delivery and unlawful possession of a controlled substance, since the State failed to present testimony that the church at issue was active on the date of the offenses, which were two years prior to defendant's trial. |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 09-CF-364; the Hon. Fernando L. Engelsma, Judge, presiding. |
| Judgment | Affirmed as modified in part and reversed in part; cause remanded. |

Counsel on
Appeal

Thomas A. Lilien and Paul Alexander Rogers, both of State Appellate
Defender's Office, of Elgin, for appellant.

Michelle J. Courier, State's Attorney, of Belvidere (Lawrence M. Bauer
and Colleen P. Price, both of State's Attorneys Appellate Prosecutor's
Office, of counsel), for the People.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial in the circuit court of Boone County in which he was convicted of unlawful deliveries and unlawful possession of a controlled substance within 1,000 feet of a church (720 ILCS 570/401(c)(2), 407(b)(1) (West 2008)), defendant, Sergio Cadena, appeals his convictions. Defendant contends that the State presented insufficient evidence from which the jury could determine that the nearby Evangelical Covenant Church was a "church" on the dates of the offenses and under the meaning of section 407(b)(1) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/407(b)(1) (West 2008)). We agree, and we affirm as modified in part, reverse in part, and remand the cause for resentencing.

¶ 2                              I. BACKGROUND

¶ 3    On October 14, 2009, defendant was indicted on three counts of unlawful delivery of a controlled substance within 1,000 feet of a church (counts I, III, IV) (720 ILCS 570/401(c)(2), 407(b)(1) (West 2008)). Those counts involved police-controlled purchases of cocaine occurring on July 26, September 12, and October 4, 2009. Defendant was also charged with one count of unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a church (count II) (720 ILCS 570/401(c)(2), 407(b)(1) (West 2008)) and one count of unlawful delivery of a controlled substance (count V) (720 ILCS 570/401(c)(2) (West 2008)), which were based on an August 2, 2009, controlled purchase.

¶ 4    Defendant concedes that he violated section 401(c)(2) of the Act (unenhanced delivery of and possession with intent to deliver a controlled substance), but he challenges the jury's finding that he committed the offenses within 1,000 feet of a church. Accordingly, defendant seeks the reversal of the enhanced Class X felony convictions and the affirmance of unenhanced Class 1 felony convictions of delivery of a controlled substance. Because the only issue on appeal is whether defendant committed the offenses within 1,000 feet of a church, we confine our factual summary to the testimony about the "enhancing locality"

identified by the State as a church.

¶ 5    David Dammon, a police officer involved in the operation, testified that the transactions giving rise to the charges occurred or originated in the parking lot of a McDonald's restaurant in Belvidere. The Evangelical Covenant Church was located northeast of the McDonald's, though it was not visible from the restaurant's parking lot. On October 6, 2009, Officer Dammon measured the distance between the church parking lot and the McDonald's parking lot using a laser device known as "LIDAR." The distance between the church's real property and the location in the McDonald's parking lot where the controlled purchases had occurred or originated was 860 feet or less.

¶ 6    Leon Barry, a police officer who had worked for the Belvidere police department for 27 years, was involved in surveillance of the "controlled purchases." Officer Barry's direct testimony comprises 75 pages of transcript in the record on appeal. In addition to extensive questioning about the circumstances of each of defendant's transactions, his only testimony about the church was sandwiched between testimony about executing search warrants on defendant and his co-offenders:

"Q. [Prosecutor:] Now, in relation to the McDonald's located at 11–sorry–1313 North State Street in Belvidere, Boone County, Illinois, is it located near the Evangelical Covenant Church locate[d] at 220 East Harrison Street in Belvidere, Boone County, Illinois[?]

A. [Officer Barry:] Yes.

Q. And in relation to that particular church, is that a church that is an active church?

A. Yes."

¶ 7    Defendant was found guilty by the jury on all counts and sentenced by the trial court to four concurrent eight-year prison terms on the charges involving delivery or possession within 1,000 feet of a church (counts I through IV). No sentence was entered on count V, which was based on the same transaction as count II. Defendant timely appeals.

¶ 8                                      II. ANALYSIS

¶ 9    On appeal, defendant does not challenge that the State presented sufficient evidence to prove him guilty of delivering and possessing with the intent to deliver a controlled substance under section 407(c)(2) of the Act. Rather, defendant challenges only the sufficiency of the evidence regarding whether his offenses were committed within 1,000 feet of a church. When a defendant challenges the sufficiency of the evidence in a criminal case, it is not the function of a reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, the proper standard of review is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When reviewing the evidence, the reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or credibility of witnesses. *People v. Phelps*, 211 Ill. 2d 1, 7 (2004). Where the evidence is so unsatisfactory as to justify a reasonable doubt of the

defendant's guilt, the reviewing court may reverse a conviction. *People v. Ehlert*, 211 Ill. 2d 192, 202 (2004).

¶ 10    Specifically, defendant argues that the State did not present sufficient evidence to allow the finder of fact to conclude that the Evangelical Covenant Church was an active church on the dates of the offenses. In other words, defendant argues that the State failed to prove beyond a reasonable doubt that the Evangelical Covenant Church was a "church *** or other building *** used primarily for religious worship" on the dates of the offenses. 720 ILCS 570/407(b)(1) (West 2008). We begin our analysis with the statute.

¶ 11    Section 401(c)(2) of the Act (720 ILCS 570/401(c)(2) (West 2008)) provides that any person who knowingly delivers or possesses with intent to deliver "1 gram or more but less than 15 grams of any substance containing cocaine" is guilty of a Class 1 felony. Section 407(b)(1) of the Act enhances the classification of a section 401(c) offense to a Class X felony if the violation occurs "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place used primarily for religious worship." 720 ILCS 570/407(b)(1) (West 2008).

¶ 12    Defendant argues that this court's decision in *People v. Ortiz*, 2012 IL App (2d) 101261, warrants reversal of his convictions. In *Ortiz*, the defendant appealed his conviction of unlawful delivery of a controlled substance within 1,000 feet of a church. *Id.* ¶ 9. At issue was the State's failure to prove beyond a reasonable doubt that the building known as the Emmanuel Baptist Church was a "church *** or other building *** used primarily for religious worship" on the date of the offense. (Internal quotation marks omitted.) *Id.* ¶ 11. Although a police officer testified that the distance from the drug transaction to the Emmanuel Baptist Church was less than 1,000 feet, he did not testify as to the date on which he conducted the measurement. *Id.* The State also offered photographs of the building into evidence, but supplied no evidence as to when the photographs were taken or that they accurately represented the building as it appeared on the date of the offense. *Id.* Because there was no way of knowing whether the church existed on the date of the offense, though the State could have easily established that fact, we reversed the defendant's conviction of unlawful delivery of a controlled substance within 1,000 feet of a church, restored and affirmed his conviction of unlawful delivery of a controlled substance, and remanded the cause for sentencing on that conviction. *Id.* ¶¶ 11, 15.

¶ 13    Here, similarly, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that the Evangelical Covenant Church was operating as such on the dates of the offenses, as required by *Ortiz*. We agree with defendant that the evidence offered by the State was insufficient to prove that the building was what it purported to be. Like in *Ortiz*, testimony identifying the building as the "Evangelical Covenant Church" was insufficient to prove that it was operating as a church on the dates of the offenses. Even where the State in *Ortiz* offered photographs of the church along with identifying it by name, we held that there was insufficient evidence tying the photographs to the dates of the offenses. Here, as we will discuss below, even less evidence was offered, and certainly not enough to prove beyond a reasonable doubt that the building in question was being used as its name implied, that is, as a church, on the dates of the offenses.

¶ 14　　In *People v. Sparks*, 335 Ill. App. 3d 249 (2002), we examined whether the Salvation Army chapel was a "church" for the purposes of the statute. Noting that the word "church" was not defined in the Act, we concluded that the legislature intended "church" to mean a place used primarily for religious worship. *Id.* at 256. We held that the Salvation Army chapel was a "church" because the undisputed evidence established that the sole purpose of the chapel was to conduct religious services.

¶ 15　　In contrast, the Evangelical Covenant Church here was, by name, a "church." Although its name supports the inference that the building in question was in fact a church (see, *e.g.*, *People v. Foster*, 354 Ill. App. 3d 564, 568 (2004) (finding that "a rational trier of fact could have inferred New Hope Church was a church used primarily for religious worship based on its name")), *Sparks* requires proof regarding *how* the building was used. See *Sparks*, 335 Ill. App. 3d at 256 (the determination of whether a place falls within the definition of a "church" must focus "on the manner in which the place is used, *i.e.*, whether its primary use is for religious worship"). The definition of "church" is complicated by the apparent discrepancy between *Sparks* and *Foster*, with *Sparks* requiring at least some information as to church activities and *Foster* holding that nomenclature alone is sufficient. Nonetheless, the State concedes that nomenclature alone is insufficient to prove that the "enhancing locality," in this case a church, is being used as its name implies.[1]

¶ 16　　Here, Officer Barry was questioned in detail about the transactions, surveillance of the transactions, execution of the search and arrest warrants, and the background of the informant or cooperating witness who purchased the drugs. By contrast, Officer Barry was asked only two questions about the church in approximately 75 pages of transcript of his direct testimony. Moreover, those two questions appear to have been asked off-handedly as an afterthought, as they were sandwiched between detailed testimony concerning the execution of two separate search warrants. In fact, the only testimony indicating that the Evangelical Covenant Church was actually being used as such on the dates of the offenses was Officer Barry's affirmative response to the leading question, "[I]s that a church that is an active church?" Not only was the question leading, but it was stated in the present tense and without temporal context. Although the State argues that "it was patently obvious" that the question referred to the dates of the offenses, this conclusion is not so "patent" as the State suggests. Factoring in the brief and leading nature of the question with its odd juxtaposition in the middle of testimony about executing search warrants, the record suggests otherwise: the unrelated questions put to Officer Barry both before and after the questions regarding the church were framed in the past tense and referred to a specific date. Rather than being patently obvious that Officer Barry was referring to the dates of the offenses, this stark contrast could, just as reasonably, suggest that he was, in fact, referring to the time of the trial, that is, two years after the dates of the offenses. Even if the jury could have inferred that the October 8, 2009, date referenced in the questions pertaining to the execution of the warrants gave a temporal locus to the two questions regarding the church, the dates of the

---

[1]Because of the State's concession regarding nomenclature, we need not further consider or attempt to resolve the apparent discrepancy between *Sparks* and *Foster*.

offenses preceded October 8, 2009, and the testimony was insufficient to prove that the church was active *on the dates of the offenses*. See *Ortiz*, 2012 IL App (2d) 101261, ¶ 11. Such a conclusion was unsustainable, given the slapdash manner in which the proof of the enhancing location was presented.

¶ 17 Even if Officer Barry's response could be taken to mean that the church was also active on the dates of the offenses two years before the trial, there was no evidence of *how* Officer Barry knew this information. The State argues that his experience on the police force was sufficient for the jury to infer that he was familiar with the church and its activities, citing *People v. Morgan*, 301 Ill. App. 3d 1026, 1032 (1998) (which, we note, was relied on by *Foster* for the proposition that the nomenclature alone was sufficient to establish that the church was what its name purported it to be). In *Morgan*, however, we held that a police officer's testimony was sufficient to establish the status of a park as a "public park," within the meaning of section 407(b)(1), where the officer demonstrated his personal knowledge of the park, rather than making an ambiguous statement about the park's activity. The officer testified that the area in question was open to the public and contained playground equipment and at least one basketball court. He had also made over 100 arrests in the area, which was known as "Bedrosian Park." Further, the defendant referred to the area as a park and admitted to playing basketball there. *Id.* at 1031-32. Thus, *Morgan* requires more than the bare facts that the witness is a police officer with a certain number of years of service; it requires the demonstration and explanation of how the witness is familiar with the enhancing location (park, school, church, or the like).

¶ 18 In contrast, here, the State failed to present testimony from someone with personal knowledge that the church was active on the dates of the offenses, "a fact that the State could have easily established by eliciting testimony from someone affiliated with the church." *Ortiz*, 2012 IL App (2d) 101261, ¶ 11. Even a neighbor, or a police officer who testified to being familiar with the church from having regularly patrolled the neighborhood, would have had sufficient personal knowledge to testify as to the church's active status. However, because the State failed to present evidence from anyone demonstrating personal knowledge as to whether the church was operating as such on the dates of the offenses, *no* rational trier of fact could have found the enhancement beyond a reasonable doubt. See *id.* ¶ 11.

¶ 19                                    III. CONCLUSION

¶ 20 Accordingly, for the foregoing reasons, we modify defendant's convictions of unlawful delivery of a controlled substance within 1,000 feet of a church (counts I, III, IV) to convictions of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2) (West 2008)) (Class 1 felonies). We reverse his conviction of unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a church (count II) and affirm his conviction of unlawful delivery of a controlled substance (count V). We remand the cause for resentencing.

¶ 21 Affirmed as modified in part and reversed in part; cause remanded.